IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| | | |
|---|---|---|
| LEE SYNTELL KELLEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 621-027 |
| | ) | (Formerly CR 620-001) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner, an inmate at the Jesup Federal Correctional Institution in Jesup, Georgia has filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Respondent moves to dismiss the § 2255 motion. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **GRANTED**, Petitioner's § 2255 motion be **DISMISSED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

**I. BACKGROUND**

    **A. Indictment**

On January 8, 2020, the grand jury in the Southern District of Georgia charged Petitioner and twenty-five co-defendants in a sixty-one-count indictment. United States v. Kelley, CR 620-001, doc. no. 3 (S.D. Ga. Nov. 2, 2020) (hereinafter "CR 620-001"). Along with naming Petitioner in the forfeiture allegation, the grand jury charged Petitioner with: conspiracy to possess with intent to distribute 50 grams or more of methamphetamine, 280

grams or more of cocaine base, and a quantity of cocaine, marijuana, alprazolam, and codeine (Count One); use of firearms in furtherance of, and during and in relation to a drug trafficking crime (Count Two); and use of a telephone in committing, causing, and facilitating the conspiracy with intent to distribute controlled substances (Count Forty-Six). Id. at 2-4, 6-7, 49.

Counts One, Two, and Forty-Six carried possible prison terms of not less than ten years nor more than life, not more than twenty years, and not more than four years, respectively. Id., doc. no. 4., pp, 2, 4. The Court appointed Thomas Anthony Giannotti as Petitioner's counsel. Id., doc. no. 36.

### B. Guilty Plea

Petitioner, in accordance with a written plea agreement, pleaded guilty to a lesser-included offense of Count One of the Indictment on June 18, 2020. Id., doc. nos. 510, 511. The written plea agreement identified the elements of the offense as:

> (1) that two or more people in some way agreed to try to accomplish a shared and unlawful plan to possess a quantity of cocaine, marihuana, and alprazolam; (2) that the Defendant knew the unlawful purpose of the plan and willfully joined in it; and (3) that the object of the unlawful plan was to possess with the intent to distribute and to distribute a quantity of cocaine, marihuana, and alprazolam.

Id., doc. no. 511, pp. 1-2 (hereinafter "Plea Agreement"). By signing the Plea Agreement, Petitioner admitted knowingly joining the conspiracy as early as August 2017 with the intent to possess and distribute the controlled substances mentioned above. Id. at 2. Further, Petitioner affirmed he did not dispute the manner and means of the conspiracy. Id. As part of the plea deal, the government dismissed any other Counts of the Indictment pending against Petitioner. Id. at 4.

### C. Sentencing

The United States Probation Office prepared a presentence investigation report ("PSI") which provided for a Total Offense Level of twenty-nine, a Criminal History Category of VI, and a Guidelines imprisonment range of 151-188 months. PSI ¶¶ 24, 38, 58. The PSI reached the Total Offense Level after determining Petitioner qualified for a Chapter Four Enhancement as a career offender due to two prior convictions for the sale of cocaine described in paragraphs thirty-two and thirty-five. PSI ¶¶ 21, 32, 35. This enhancement replaced his Adjusted Offense Level of fourteen with an Offense Level of thirty-two. Id. The PSI reduced the Offense Level by three points for acceptance of responsibility, leaving him with a Total Offense Level of twenty-nine. PSI ¶¶ 22-24. Neither party filed any objections to the PSI. CR 620-001, doc. nos. 701-02.

Petitioner's counsel filed a sentencing memorandum on October 15, 2020, asking the Court to consider a downward departure from the applicable sentencing guideline range. Id. doc. no. 767. His counsel argued "the career offender enhancement [was] greater than necessary to accomplish the goals of sentencing," because Petitioner was a "low-level, non-violent drug offender with prior state convictions for relatively minor drug offenses." Id. at 4. Notably, without the application of the Chapter Four Enhancement, counsel argued Petitioner would otherwise be characterized as a minimal or minor participant in the conspiracy Id. at 6.

On October 22, 2020, United States District Judge R. Stan Baker imposed a sentence below the recommended guideline range. Id., doc. no. 779. He sentenced Petitioner to 131 months of imprisonment, three years of supervised release, and a $100 special assessment.

Id. at 2-3, 7.  The judgment entered on November 2, 2020, and Petitioner did not directly appeal.  Id., doc. no. 810.

### D.  § 2255 motion

On April 8, 2021, Petitioner filed the instant § 2255 motion to vacate, set aside or correct his sentence, claiming ineffective assistance of counsel.  Id., doc. no. 1026 at 1.  Petitioner alleges he was improperly classified as a career offender; thus, his counsel was ineffective for not objecting to such a classification in the PSI and the sentencing hearing.  Id. at 1-2.

Initially, Petitioner argued his convictions for possession of cocaine and marihuana in 2008 – described in paragraphs thirty-three and thirty-four of the PSI – could not be used to support a career offender characterization because those convictions failed to demonstrate his intent to either manufacture or distribute the illicit substances.  Id.  Petitioner further contends he is entitled to a minor role reduction as well as a reduction under Amendment 782 of U.S.S.G. § 2D1.1(c) if his career offender status is improper.  CR 620-001, doc. no. 1026, pp. 4-5.

### E.  Motion to Dismiss

Respondent filed a motion to dismiss the § 2255 motion, stating that the two convictions Petitioner based his argument on were not the convictions used to qualify him as a career offender.  Id., doc. no. 1076, p. 8.  Rather than the convictions in paragraphs thirty-three and thirty-four of the PSI, the convictions in paragraphs thirty-two and thirty-five caused the Chapter Four Enhancement.  Id. at 8-9.  As such, Respondent argued Petitioner could not show Mr. Giannotti acted unreasonably and with prejudice to his client.  Id. at 8.  Further, Respondent argues even if Petitioner "complains that his guidelines were improperly

4

calculated, such a collateral challenge is non-cognizable under § 2255." Id. at 9.

Petitioner filed a response to the motion to dismiss, contending a career offender enhancement would still be invalid even if based on the convictions in paragraphs thirty-two and thirty-five. Id., doc. no. 1091. He reasons that U.S.S.G. § 4A1.2(e)(1) requires a prior conviction to be imposed within the last fifteen years to be counted. Id. at 2. As such, Petitioner states his conviction for the sale of cocaine in 2004 – described in paragraph thirty-two of the PSI – goes beyond the fifteen-year limitation and, thus, cannot be used to support a Chapter Four Enhancement. CR 620-001, doc. no. 1091, p. 2. Petitioner also argues he should have received a minor role reduction when the Court chose to sentence him below the advisory guideline range. Id. at 4.

Respondent filed a reply arguing Petitioner improperly raised his claim that the 2004 conviction was outside of the fifteen-year timeframe because he "cannot raise new claims in response to the government's motion to dismiss." Id., doc. no. 1097, p. 1. In addition, Respondent asserts Petitioner's new claim is meritless both because fifteen years had not passed before the commencement of the instant offense and U.S.S.G. § 4A1.2(e)(1) dictates an offense is counted so long as the defendant remained incarcerated during any part of the fifteen-year timeframe. Id. at 2. Petitioner was incarcerated for the 2004 conviction until December 11, 2006, and his parole was revoked on June 12, 2007 causing him to be incarcerated again until December 12, 2007. Id. at 3.

## II. DISCUSSION

### A. Petitioner's Heavy Burden Under Strickland v. Washington To Establish Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). See Massaro v. United States, 538 U.S. 500, 505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013). Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). The purpose of this review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different . . . . But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*).

Because no absolute rules dictate reasonableness, counsel has no duty to investigate particular facts or defenses. Id. at 1317. Counsel is not required to "pursue every path until it bears fruit or until all available hope withers." Puiatti v. Sec'y, Fla. Dep't of Corr., 732 F.3d 1255, 1280 (11th Cir. 2013) (quoting Foster v. Dugger, 823 F.2d 402, 405 (11th Cir. 1987)). Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691.

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do

6

with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ."  Ward v. Bowen, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)).  The Court must resist "using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time."  Chandler, 218 F.3d at 1316; see also Waters, 46 F.3d at 1514 ("The widespread use of the tactic of attacking trial counsel by showing what might have been proves that nothing is clearer than hindsight – except perhaps the rule that we will not judge trial counsel's performance through hindsight.")

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013).  Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.

A petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal

7

quotations omitted). Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

The Court's analysis is further guided by the principle that appellate counsel is not ineffective for failing to raise claims reasonably considered to be without merit. United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000); see also United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (rejecting ineffective assistance argument because "a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client").

### B. Petitioner's Response to the Motion to Dismiss Should Be Construed as a Motion to Amend

Petitioner's response to the motion to dismiss alleged additional facts relating to the 2004 conviction in paragraph thirty-two of the PSI – one of the two predicate offenses used to justify the Chapter Four Enhancement. Respondent argues the response brings a new claim not originally present in the § 2255 motion and therefore such claim is improper under this Circuit's case law.

The Court disagrees with Respondent. In this Circuit, *pro se* responses to motions to dismiss have consistently been treated as motions to amend. See, e.g., Robins v. Oubre, No. 5:13-CV-348 (CAR), 2014 WL 4070851, at *1 (M.D. Ga. Aug. 15, 2014) ("Construing additional facts in *pro se* responses to motions to dismiss as motions to amend is consistent with the accepted practice in this Circuit."); Miller v. Allen, No. 1:13-cv-131, 2014 WL 3965954 (M.D. Ga. Aug. 13, 2014). Indeed, it is well established "[a] document filed *pro se* is 'to be liberally construed'" by the Court. Erickson v. Pardus, 551 U.S. 89, 94 (2007)

8

(citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  Also, Petitioner does not raise an entirely new claim in his response; he merely alleges a different set of facts supporting his initial claim, ineffective assistance of counsel at sentencing. This Circuit has noted the difference between bringing a new claim and offering a new factual basis for the same claim. See, Robins, 2104 WL 4070851, at *1 (allowing a response brief to act as a motion to amend because "[p]laintiff . . . does not raise an entirely new claim in his responses; rather, he alleges more facts to support the same failure to protect claim previously asserted"); cf, Griggs v. USAA Cas. Ins. Co., 263 F. Supp.3d, 1375 (N.D. Ga. 2017).  As such, the Court is willing to construe Petitioner's response as a motion to amend; therefore, the Court will address the merits of both Petitioner's initial § 2255 motion and his response.

### C. Petitioner's Unamended § 2255 Motion Fails to Demonstrate Ineffective Assistance of Counsel

As explained above, the Court may dismiss an ineffective assistance of counsel claim where Petitioner fails to demonstrate his counsel fell below an objective standard of reasonableness and he suffered prejudice.

Here, Petitioner's unamended claim clearly fails to demonstrate prejudice.  Petitioner premises his argument on the assumption that the two convictions in paragraphs thirty-three and thirty-four of the PSI are what qualified him as a career offender; however, the PSI states the convictions in paragraphs thirty-two and thirty-five were the basis for the Chapter Four Enhancement.  (PSI ¶ 21.)  As such, Petitioner's arguments regarding paragraphs thirty-three and thirty-four have no bearing on his status as a career offender; therefore, he failed to demonstrate prejudice and meet the second prong of Strickland.

9

Further, because there is no merit to the arguments in the initial § 2255 motion, Mr. Giannotti did not act unreasonably or provide ineffective assistance of counsel by failing to raise such challenges.  See Strickland, 466 U.S. at 688, 694; Nyhuis, 211 F.3d at 1344.

### D.  Petitioner's Amended § 2255 Motion Fails on the Merits

Respondent argues the claims in Petitioner's response to the motion to dismiss are meritless, and the Court agrees.  Petitioner contends his 2004 conviction for the sale of cocaine is outside the fifteen-year timeframe required for a conviction to be counted under U.S.S.G. § 4A1.2(e)(1).  That section states the following:

> Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

Petitioner's argument fails under U.S.S.G. § 4A1.2(e)(1) on two counts.  First, the 2004 offense is within the fifteen-year period contemplated by the section.  In finding the appropriate date from which to measure fifteen years, the Court must look at when Petitioner commenced the instant offense.  Notably, "the term 'commencement of the instant offense' includes any relevant conduct," not only the date when Petitioner was charged.  U.S.S.G. § 4A1.2, app. n.8. This Circuit has "warned that when the government charges a conspiracy offense that takes place over a period of time, 'some complications arise' in identifying the date when the defendant began the relevant conduct."  United States v. Bass, 838 F. App'x. 477, 483 (11th Cir. 2020) (citing United States v. Cornog, 945 F.2d 1504, 1509 (11th Cir. 1991)).  In determining the date when the relevant conduct began, then, the Court "generally count[s] back 'only from the last day alleged as part of the conspiracy.'"  Id.  However, Bass

10

differentiated the scenario where a defendant pleads guilty and in doing so stipulates a date for joining the conspiracy. Id.

Petitioner pleaded guilty, admitting the facts contained within the written plea agreement. In said agreement, Petitioner stipulated he joined the conspiracy "at least as early as August 2017." CV 621-027, doc. no. 511, p. 2. The PSI also stated Petitioner's actions in the conspiracy started "from at least August 2017," and Petitioner did not object. PSI ¶ 1. Therefore, the Court will count back from August 31, 2017, the last possible day Petitioner could have joined the conspiracy in August 2017. Because the Court sentenced Petitioner for the sale of cocaine on August 19, 2004 – only thirteen years prior to August 31, 2017 – the 2004 offense falls inside the fifteen-year timeframe contemplated by U.S.S.G. § 4A1.2(e)(1).

Second, even if the Court used January 8, 2020 – the last day alleged as part of the conspiracy – as the commencement date of the instant offense, Petitioner's arguments still fail because he was incarcerated for the 2004 offense within the fifteen-year timeframe. The PSI states he was sentenced to eight years of confinement for the 2004 sale of cocaine and was imprisoned from August 19, 2004 until December 11, 2006. PSI ¶ 32. U.S.S.G. § 4A1.2(e)(1) states a prior sentence ought to be counted if the period of incarceration is longer than a year and one month and falls within the fifteen-year timeframe. Since those conditions have been met, the 2004 sale of cocaine would have to be counted towards a Chapter Four Enhancement.

Because Petitioner's argument is meritless, Mr. Giannotti did not provide ineffective assistance of counsel by failing to raise such a challenge. See Strickland, 466 U.S. at 688, 694; Nyhuis, 211 F.3d at 1344.

11

In sum, even affording Petitioner the benefit of treating his response to the motion to dismiss as a motion to amend, Petitioner's arguments fail on the merits. For the reasons previously explained, the 2004 conviction for the sale of cocaine described in paragraph thirty-two of the PSI clearly falls within the fifteen-year period contemplated by U.S.S.G. § 4A1.2(e)(1). As such, that conviction was properly counted towards a Chapter Four Enhancement; thus, Petitioner was not prejudiced by counsel's choice not to object to his career offender status. Because Petitioner failed to show Mr. Giannotti acted unreasonably or caused him prejudice, he fails to meet either prong of the analysis set forth by Strickland. Therefore, the Court grants Respondent's motion to dismiss.

### E. A Certificate of Appealability Should Not Issue

The Court also recommends denial of a certificate of appealability ("COA") and denial of *in forma pauperis* ("IFP") status on appeal. A federal prisoner must obtain a COA before appealing the denial of his motion to vacate. The District Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts. Applying the COA standards, which are set forth in Roberson v. United States, 217-CV-2, 2018 WL 1746132, at *17 (S.D. Ga. Apr. 11, 2018), the Court discerns no COA-worthy issues regarding the instant § 2255 motion, so no COA should issue. 28 U.S.C. § 2253(c)(1); see Slack v. McDaniel, 529 U.S. 473, 484 (2000) ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case . . . no appeal would be warranted."); see also Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (approving *sua sponte* denial of COA before movant filed notice of appeal). Since there are no non-

frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, IFP status on appeal should likewise be denied. 28 U.S.C. § 1915(a)(3).

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **GRANTED**, Petitioner's § 2255 motion be **DISMISSED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent. The Court further **RECOMMENDS** Petitioner be **DENIED** a COA and permission to appeal IFP.

SO REPORTED and RECOMMENDED this 24th day of September, 2021, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA